Hon. John Van Lindt Chairman Racing and Wagering Board
This responds to a request from your director of wagering systems for an opinion as to the legality of a proposal for electronic bingo.
The proposal was commissioned by the New York Council of Charitable Organizations (NYCCO), a not-for-profit corporation which promotes the interests of some of New York's charities. The proposed electronic bingo game utilizes computer terminals to take the place of the traditional bingo cards. Each terminal displays two bingo "cards" on its screen and is electronically connected to a central computer. A player pays $1.00 to participate in the game. In place of the random selection of numbered balls as in traditional bingo, the central computer randomly selects a call number and displays it in the players' screens. As stated in the proposal, "[i]f the number appears on the player's card, it is marked. This continues until one (or more) of the players is a winner, and all play ceases" (letter from John F. Aiello, Executive Director NYCCO to Racing and Wagering Board, April 22, 1985). The winners receive a prize of $3.00. NYCCO has requested the Board's approval of the proposal, and you have, in turn, requested our opinion as to whether the proposal complies with constitutional and statutory standards.
By way of background, Article I, section 9 of the Constitution bans all forms of gambling not expressly authorized in the Constitution itself. As originally enacted, the Constitution of 1894 banned any and all forms of gambling. Exceptions have been made to allow for pari-mutuel betting on horse racing (1939); to allow for bingo or similar games of chance to raise funds for eleemosynary groups (1957); to allow for the establishment of the State lottery (1965); and to expand the special exception granted to eleemosynary groups (1975). Each of these exceptions was implemented by constitutional amendment. Recent opinions of this office have concluded that any expansion of legalized gambling in New York must be done by constitutional amendment (Op Atty Gen No. 85-12 [video games simulating various methods of gambling]; Op Atty Gen No. 84-F1 [proposed sports betting lottery]; 1981 Op Atty Gen 68 [proposed computer gambling lottery]).
The definition of bingo and standards for its play are set forth in the State Bingo Control Commission's regulations. Included among these regulations is the definition for bingo:
 "Regular bingo game shall mean a game that is played on a card or cards issued to a player upon payment of the admission" (19 NYCRR § 5800.1[a]).
and instructions as to how the games shall be conducted:
 "Kind of equipment used for games. The equipment used in the conduct of bingo shall be maintained in good repair and sound working condition. The utilization of such equipment and the method of play shall be such that each player is afforded an equal opportunity to win. The objects or balls to be drawn shall be essentially the same as to size, color, shape, weight, balance and all other characteristics so as to be, at all times during the conduct of bingo, equally agitated and circulated within the receptacle. All 75 objects or balls shall be present in the receptacle before each game is begun. All numbers announced shall be clearly audible to all the players present. Where more than one room is used for any one game, the receptacle and the caller and his assistant must be in the room where the greatest number of players are present and all numbers announced shall be clearly audible to the players in such room and also clearly audible to the players in the other room or rooms.
 "Drawing of numbers. There shall be two persons present at the receptacle from which the objects or balls are drawn; one person shall remove the object or ball from the receptacle, observe the number, and hand it to the other person who shall call the number and be responsible for the numbers being called accurately and audibly to all players present. Once removed, no object or ball shall be returned to the receptacle until after the conclusion of the game.
 "Visibility of drawing to players. The receptacle, the caller and the person removing the objects or balls from the receptacle shall be visible to the majority of players at all times" (19 NYCRR §§ 5820.15; 5820.16; 5820.17.)
These regulations clearly define bingo as a mechanical game, consisting of the manual selection of numbered balls from a container. They do not contemplate a computerized game like the one in issue here.
The question remains whether an amendment of the regulations to permit computerized bingo is authorized by the statutes.
The legislative declaration of purpose underlying the authorization of the "local option for bingo" notes that prior to its legalization, bingo was the subject of exploitation by professional gamblers, promoters and commercial interests (General Municipal Law, § 475). The Legislature declared "that all phases of the supervision, licensing and regulation of bingo and of the conduct of bingo games, should be closely controlled and that the laws and regulations pertaining thereto should be strictly construed and rigidly enforced" (ibid.). Bingo is defined as a game of chance "in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random * * * *" (§ 495-a[1]).
Article 19-B of the Executive Law creates the State Bingo Control Commission, which regulates the licensing of bingo games throughout the state. The Commission is empowered to license persons to sell or distribute "cards, boards, sheets, pads and all other supplies, devices and equipment" designed for use in the playing of bingo (Executive Law, § 435[2][a]). It also is empowered "to approve and establish a standard set of bingo cards comprising a consecutively numbered series and shall by its rules and regulations prescribe the manner in which such cards are to be reproduced and distributed to licensed authorized organizations" (id., § 435[3]).
It seems clear that these statutory provisions contemplate the use of the traditional hand-held cards for the playing of bingo. In light of the legislative directive that the bingo laws be strictly construed, we do not believe that these provisions reasonably can be construed to authorize a computerized terminal to replace the traditional bingo card.
We conclude that the laws governing bingo do not authorize an electronic bingo proposal.